McDonald and another vs. The Chicago, Milwaukee & St. Paul R. Co.

McDonald and another, Administrators, Respondents, vs. The Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*October 22 — November 5, 1889.*

*Railroads: Killing of person driving along the track: Contributory negligence: Intoxication: Gross negligence of trainmen.*

| 75 | 121 |
| 87 | 207 |

1. One who, having got upon the railroad track in the night at a highway crossing, continued to drive his team along the track for a distance of nearly two miles, there being nothing to prevent his leaving it, was guilty of such negligence as will defeat a recovery for his death caused by a passing train, although his getting upon the track in the first instance was due not to his own negligence but to that of the railroad company.
2. The fact that the deceased was intoxicated does not excuse his negligence.
3. Evidence that those in charge of the train discovered a wagon box and seat near the track shortly before reaching the deceased and his team, does not tend to show that they knew some one was on the track ahead of them, or that they were guilty of gross negligence in proceeding at the usual rate of speed.

APPEAL from the Circuit Court for *Marathon* County. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought to recover damages of the defendant for negligently causing the death of Daniel McDonald. The complaint charges the defendant with negligence which caused the death of said McDonald, first, by neglecting to fence its track or put in a cattle-guard at a highway crossing at a place described in the complaint; that the deceased, on the 10th of December, 1887, was driving along said highway onto said crossing with his team of horses and wagon; that at or near said crossing, said horses became frightened, without fault on his part, and unmanageable; "that in consequence of said railroad not being fenced, and there being no cattle-guard at said crossing, and said

wagon road crossing said railroad obliquely, said team went upon said railroad track, instead of keeping in the wagon road, as they would have done had there been a cattle-guard erected at said crossing, and had said railroad been fenced and the fence connected with said cattle-guard; that soon after said team had gone onto said railroad track, drawing said wagon, in which said Daniel McDonald was riding, said defendant, by its agents and servants, its engineer, conductor, fireman, and brakeman, acting for defendant and within the scope of their authority, having charge of defendant's freight train, caused the same to be run over said road and past said highway crossing; that, a short distance from said crossing, said defendant, and its said trainmen, officers, agents, and servants, were duly notified that said team had gone onto said railroad track, drawing with them said wagon, in which said Daniel McDonald was riding, and that said team and wagon and the driver had gone down the track towards Wausau, and was still on said track; that with this information, and with full knowledge of all the foregoing facts, and with full knowledge that a man and team were on the track, and well knowing that said man and team could not escape or get off from said track, said defendant, by its said agents and servants in charge of said train, negligently, carelessly, and recklessly ran said train at a dangerous rate of speed in the direction where said Daniel McDonald and said team had gone on said railroad, and, about one mile south of said crossing, said freight train, going at full speed, ran onto said team, killing said Daniel McDonald instantly, and also killing said horses and destroying the wagon and harness, to plaintiffs' damage five thousand dollars."

The answer admits that McDonald was killed, while on the track of the defendant, by a train operated by said railroad. It also admits the killing of the horses and the destruction of the wagon at the same time and by the same

train.    The answer further denies "that the death of said McDonald, and the damage and injury to his horses and wagon, were caused by any negligence on the part of the defendant or any of its agents, servants, or employees; but, on the contrary, defendant alleges that at and prior to the accident hereinbefore mentioned, said deceased was not in the exercise of ordinary care and caution, and that such want of ordinary care and caution on his part contributed directly to produce his death and the damage and injury aforesaid."

On the trial the plaintiffs had a verdict in their favor for the sum of $5,250 damages, and judgment was entered in their favor against the defendant for such damages and the plaintiffs' costs of the action.    From this judgment defendant appealed to this court.

For the appellant there was a brief by *John T. Fish*, attorney, and *Burton Hanson*, of counsel, and oral argument by *Mr. Hanson*.

For the respondents there was a brief by *John Livermore*, attorney, and *Cate, Jones & Sanborn*, of counsel, and oral argument by *G. W. Cate*.    To the point that, even if the deceased was guilty of negligence, the defendant is still liable because of the gross negligence of its employees after they became aware of the danger of the deceased, they cited *Isabel v. H. & St. J. R. Co.* 9 Am. R. Rep. 261; *Baltimore & O. R. Co. v. Kean*, 28 Am. & Eng. R. Cas. 580–584; *Hanna v. T. H. & I. R. Co.* 119 Ind. 316; *Kelly v. U. R. & T. Co.* 95 Mo. 279; Thomp. Neg. 451, 1108, 1115, 1118; *Frazer v. S. & N. A. R. Co.* 81 Ala. 185; *Illinois Cent. R. Co. v. Godfrey*, 71 Ill. 508; *St. Louis, I. M. & S. R. Co. v. Monday*, 49 Ark. 257; *Chicago & A. R. Co. v. Kellam*, 92 Ill. 245; *Indianapolis, B. & W. R. Co. v. McBrown*, 46 Ind. 229; Beach, Neg. 67; Cooley, Torts, 674; Pierce, Railroads, 330; *Palmer v. C., St. L. & P. R. Co.* 112 Ind. 250; Rorer, Railroads, 1126; *Finlayson v. C., B. & Q. R. Co.* 1

Dill. 579; *Baltimore & O. R. Co. v. State*, 36 Md. 366; *Brown v. H. & St. J. R. Co.* 50 Mo. 461.

TAYLOR, J. It is contended by the learned counsel for the appellant that this verdict and judgment should be reversed for the reason that it is wholly unsupported by the evidence. The evidence on the trial shows conclusively that the deceased, on the 10th day of December, 1887, was in the village of Merrill with his horses and wagon; that he left the village with his team in the early part of the evening, and when it was about dark; that he drove in a southwesterly direction along a highway which had been used for twenty years or more; that, about four fifths of a mile from the village, this highway crossed the track of the defendant in a very oblique direction; that, when deceased came to this crossing, his horses, instead of crossing the railroad track, turned to the right on the railroad track; that, from the appearance of the tracks of the horses, they were not running at the time they turned on the railroad track; that the team and wagon went along on the railroad track upon a walk, in a southerly direction, about 2,700 feet, to a place where there was an open culvert ten feet in length and eight feet deep; that the horses and wagon passed this culvert in safety, and, about 350 feet southerly from this culvert, it appeared that for some cause the wagon-seat fell off, and was left beside the track, and, 260 feet beyond that, the wagon-box and its contents were found very near the track. The horses, wagon and deceased, without the wagon-box and seat, proceeded along the track very nearly a mile further; and up to this time, from the appearances testified to by the witnesses, the horses had traveled on a walk. At or about this point, it appeared as though there had been an attempt made to turn the team around, or to turn them off the track of the railroad. This point was about 1,000 feet northerly from

the trestle in the road where the deceased and his horses were killed and his wagon destroyed. From that point to the trestle the evidence tended to show that the horses proceeded on a run. The team passed over two thirds of the length of the trestle, and then fell through, and got fastened in it, where they and the deceased were soon after killed by a freight train of the defendant, on its way from the village of Merrill. This train left Merrill at 7 o'clock P. M., and the distance from Merrill to the place of the accident was a little over two and one-half miles.

The evidence also shows conclusively that the train, after passing the wagon seat and box on the way, was stopped by those in charge of it, and some of the men in charge went back and discovered the wagon box and seat lying by the side of the road. After making this discovery, the conductor in charge of the train directed the train to proceed, and it did proceed, with a full head of steam, running at the rate of from twelve to sixteen miles an hour. Those in charge of the train did not discover the deceased with his horses and wagon on the trestle until it was too late to stop the train before reaching them, although an effort was made to do so. Before the train was stopped, the engine had run about forty rods beyond the place where the deceased and his team were struck and killed. There was evidence tending to show that when the train stopped and those in charge examined the wagon box and seat, their attention was called to the fact that wagon tracks were discovered showing that the wagon and team had passed on in the direction the train was moving along the railroad track. The evidence also strongly tended to show that the night was very dark, and that the planks at the crossing, both between the rails and outside of them, had been removed by the employees of the railroad company in the afternoon of the 10th of December, 1887; and one of the planks was placed, one end upon the fence on the easterly

side of the crossing, and the other end rested on the ground in the road. The reason for doing this was that a new road had just been opened on the easterly side of the railroad track from a point a little south of the crossing into the village, for the purpose of avoiding this crossing. There was no evidence, however, tending to show that the deceased had any knowledge of the fact that any planks had been taken up at this crossing, or that there had been any attempt to obstruct this old highway at that place, or at any other place.

There was also considerable evidence given on the part of the defendant strongly tending to show that the deceased was very much intoxicated when he started with his team from Merrill on his way home.

It is claimed by the learned counsel for the appellant that this evidence conclusively establishes the fact that the negligence of the deceased was the proximate cause of his death. After a careful consideration of the evidence, we do not see how any other legitimate conclusion can be reached than that the deceased was guilty of gross negligence in continuing to drive along the railroad track, especially in the night-time, for a distance of nearly two miles. On the part of the learned counsel for the plaintiffs, it is contended that the deceased and his team came upon the railroad track by reason of the negligence of the company in removing the planks at the highway crossing, and by not having any fence or cattle-guard at that place. My opinion is that, upon the evidence in this case, the fact that the deceased and his team got upon the railroad track at this crossing might well be attributed to the neglect of the railroad company and its employees. The darkness of the night, and the other facts stated as existing at this crossing, might very well account for the fact that the deceased and his team went upon the track from that crossing, without charging the deceased with negligence; and if the accident

McDonald and another vs. The Chicago, Milwaukee & St. Paul R. Co.

had happened very near this crossing, and before the deceased had gone far enough upon the track to discover his mistake, there would be good ground for holding the company liable for the damages. The proofs, however, showed that the deceased continued, with his team and horses, driving along this track for a distance of nearly two miles, before he was overtaken by the train and killed. Notwithstanding the darkness of the night, it appears to us conclusive that the deceased was guilty of gross negligence in so doing. If the man was not insane or stupidly intoxicated, there can be no excuse for his conduct in remaining on the track for so great a distance. There is no evidence that he was insane; and, if he was stupidly intoxicated, that unfortunate condition is no excuse in the law or justification for his not getting off the track as soon as he was aware that he was on it, and he must have been aware that he was on the track long before the accident happened, unless intoxicated or insane. The deceased, knowing he was on the railroad track, and, after such knowledge, knowingly remaining on the track for any considerable length of time, was guilty of gross negligence, and such negligence clearly contributed to his death.

Driving a team of horses upon a railroad track, lengthwise of the track, though the same be not fenced, is not only gross negligence, but by our statute is made an offense, punishable by fine, and liability to the railroad company for all damages which shall be caused to the company by so doing. See sec. 1811, R. S. The part of the section which relates to this subject reads as follows: "If any person or persons shall ride, lead, or drive any horse or horses, or team or teams, lengthwise of said track [meaning railroad track] when it is not fenced (other than at farm crossings, or upon depot grounds, or where the same is laid along or across a public road or street), without the consent of the corporation or party having control of such road, he

shall for every such offense forfeit a sum not exceeding ten dollars," etc.    This statute makes the act of the deceased, as shown by the evidence given on the trial, not only negligence, but criminal negligence; and this legislation is justified as not only being for the protection of the lives and property of those owning and engaged in the operation of the railroad, but also for the protection of the lives of those traveling upon such road.

Although there may not have been any criminal or other negligence on the part of the deceased in getting on the track of the company at the crossing, still, as soon as he was conscious he was on the track of the company, it became his duty to get off the same as soon as it was possible for him to do so, and he was in no way justified in remaining on the track an unreasonable length of time because he was brought there by the negligence of the company. There is nothing in the evidence in the case which shows that there was any great difficulty in getting off the track, notwithstanding the darkness of the night.    There were no fences on either side of the same to prevent him from leaving.    The darkness was some hindrance; but an ordinarily cautious man, in his normal condition, would have found no difficulty in leaving the track long before the accident happened.

Under the evidence and the law in regard to contributory negligence, there seems to be no way of escaping the conclusion that the negligence of the deceased contributed directly to his death.    Had he been in the exercise of ordinary caution no accident would have happened.

But it is urged by the learned counsel for the respondents that if it be admitted that the deceased was guilty of negligence, and even of criminal negligence, still the company is liable on the alleged ground that the employees of the company were grossly negligent in running over and killing him.    This claim is made under the allegations in the com-

plaint that the persons in charge of the train knew that the deceased was on the track with his team, and was driving along said track not far ahead of their train; and that notwithstanding such knowledge, and knowing that the deceased could not escape or get off the track, they negligently, carelessly, and recklessly ran the train at a high rate of speed upon the deceased and his team. We think that if the proofs had established, or even tended to establish, those allegations in the complaint, then, under the authorities cited by the learned counsel, and many others that might be cited, the negligence of the deceased would be no justification for the defendant, and the company would be liable notwithstanding the plaintiff's negligence. We think the evidence does not tend to establish the fact that the persons in charge of the train knew that the deceased was ahead of them, driving along the track. The only evidence on that subject is the fact that they knew that there was a wagon-box and a wagon-seat along-side of the track, which had been lately deposited there, and presumptively the box and seat had been thrown from a wagon that had passed across or along the track at that point. The evidence does not show that there was anything to indicate how long these articles had lain there; whether ten minutes, or an hour, or two hours. And the fact that they were there, and had been thrown from a wagon passing there, would rather tend to prove that the team and driver had hastened to get off the track, rather than continue his journey along such a dangerous way. The evidence does not tend to show that gross negligence charged in the complaint on the part of the men in charge of the train, and it is only gross negligence on the part of the employees of the company which would render it liable for the death of the deceased.

The impression unavoidably made upon the mind by reading the evidence in this case is that the unfortunate deceased had indulged to such an extent in intoxicating

liquors before he left the village of Merrill that he was nearly, if not absolutely, unconscious of his surroundings; that, in such semi-unconscious state, he permitted his horses to take the railroad track at the crossing, and that even the loss of the box and seat of his wagon, after traveling along the track for half a mile and more, did not arouse him from his stupor sufficiently to comprehend the danger of his situation, and he proceeded heedlessly along the track until the rushing train terminated his life.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

