Anderson, Respondent, vs. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Appellant.

*February 5 — February 23, 1894.*

*Railroads: Killing of person on track: Trespass: Implied license: Negligence: Evidence: Intoxication: Contributory negligence.*

1. Plaintiff's intestate was killed by defendant's train while he was walking over a trestle on which defendant's main track was laid, and which was distant from any station, depot grounds, or yard. The trestle was 120 feet long and was so built as to repel rather than invite foot travel over it, being unplanked and so narrow as to leave no room on it outside of a passing train. It was crossed daily by a dozen regular trains, besides others. *Held*, that no license to use the trestle as a footway could be implied from its customary use by pedestrians for that purpose,— especially in view of sec. 1811, R. S., making it unlawful for any person not connected with the railroad to walk along the track except when it is laid along a public road or street,— and that the deceased was therefore a trespasser, to whom defendant owed no special duty to keep a lookout to discover his presence on the track. [Orton, C. J., is of the opinion that, notwithstanding sec. 1811, R. S., there may be an implied license to walk along a railroad track at other places than along a public road or street.]

2. Evidence that for a few days after the accident trains were run more slowly over the trestle was not admissible to show negligence in running the train at a dangerous rate of speed at the time of the accident.

3. An instruction to the jury that if there was no contributory negligence on the part of the deceased the defendant would be liable even if the deceased was intoxicated at the time he lost his life, was erroneous, since, whether he was intoxicated or not, the deceased could not, under the circumstances, be held free from contributory negligence.

Anderson vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

APPEAL from the Circuit Court for *Ashland* County.

This action was brought to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant on the 19th of November, 1892. It was alleged that at the time mentioned the intestate, 'Fred Anderson, was lawfully traveling along and crossing a portion of the track of the defendant which was used for several years and down to the time of the accident, with defendant's knowledge and consent, for the purpose of a footway by foot travelers, at or near the intersection of Sixteenth avenue west and Third street in the corporate limits of the city of Ashland; that the defendant, by its servants, etc., carelessly and negligently caused one of its locomotives, with a tender and two passengers cars, to pass over and across said railway track and said traveled way at the rate of about thirty miles an hour, and negligently failed to give any signal by bell or whistle of its approach, so that the said Anderson was unaware of the approach of said engine and cars; and by reason of such fault and negligence of the defendant, while so traveling along said footway upon said railroad, without fault or negligence on his part, said Anderson was struck by said locomotive and killed. And the complaint contained other appropriate averments, and claimed damages in the sum of $5,000. The defendant admitted that Anderson was walking on its track at the time in question, and across one of its bridges, and was struck by a locomotive and train of cars of defendant and killed, but denied all other material allegations of the complaint.

At the trial before a jury, it was testified, in substance, by one Swanson on the part of the plaintiff, that on the morning in question, about half past 6 o'clock, Anderson came to his house and they went down town to see if there were any lumber boats in; that they went across the bridge to Swan Swanson's, on Second street, where they had some

whisky and hot water to drink, and then went to the bay, and in about half an hour returned to Swanson's, where they had two more drinks of the same kind, talked together, and read a paper, and started for home; that they got another drink at the billiard hall,— straight whisky,— and went right out, thence up Fourteenth avenue to the railroad, and then took the railroad track west. In going home they went the usual way, and crossed the trestle; "used it all the time. People crossed it most every hour,— men, women, and children. When we got to the trestle, I turned around to look behind, and I looked ahead. Did not see any train, nor hear any bell or whistle sounded, before we got on the trestle. We walked out on the trestle, and the bell was rung. I looked ahead, but did not see any locomotive, and I turned partly around to see if the train was coming on the Northern Pacific track. Saw no train there, and I turned around a little more. Looked behind me again. I did not see any train there. Turned clear back. I looked ahead, and saw the train coming about 200 feet from us. That is the first I saw of it. I said: 'Anderson, the train is coming. We will have to jump.' I leaned myself over the edge of the bridge, and hung onto the bridge. Anderson, as far as I could see, turned sideways to try to get off, and one of his feet slipped, and he got between the ties. Then he went down, and did not get away from that place before the train struck him. I did not turn and run back, because I thought I hadn't time. He was dead when I next saw him. The train was the 'Bayfield Scoot.' I knew that train came along every morning about a quarter to ten o'clock. When on the railroad track, did not think of the train. Thought it had got to the depot already. Anderson was walking on the left hand, and I on the right. I think he had hold of my arm. Was about thirty-three feet on the bridge when I heard the bell ring. It is not a fact that Anderson

and I were quite full that morning. He was not stagger-
ing as he went along with me. He had hold of my left
arm. Sometimes, when walking together, he used to take
hold of my arm, but not because he was drunk. We were
friends. He lived on 16th avenue, in sight of this trestle,
near 5th or 6th street. I lived on 4th street, only a short
distance from the west end of the trestle. I was not so
drunk but what I knew what I was about, and Anderson
was not. He was able to walk. The train was running as
it usually did. Cannot tell how many miles an hour."

Considerable evidence was given to the effect that it was
a common occurrence for everybody to travel over this
trestle every day, and all classes of people, at the time of
the accident, and had been for some four years; that the
ordinary rate of speed in passing over it was about thirty
to thirty-five miles an hour. The plaintiff was allowed,
against objections of the defendant, to show by one Weed
and also by one Oleson that for two or three days or so
after the accident the train ran very slowly over the
trestle, and that in a couple of weeks they ran at their
former rate of speed again. There was no planking or
footway on this bridge; simply the open trestle. They
had to step from tie to tie in crossing it. It was 120 feet
long, and Anderson was killed thirty-three feet from the
east end, on the east side of Fifteenth avenue, as he and
Swanson were going towards the train approaching from
the west. The ravine at the deepest point was twenty-
three feet deep. There was another like trestle over a
deep ravine to the west, 189 feet long, and the interval be-
tween the two was 139 feet — both on the main track or
line of defendant, and used by pedestrians to about the
same extent. Going west from the east end of the first
trestle, there is a curve in the track to the right, and both
are embraced in the curve. The view from the east to the
westward along the track was somewhat obstructed by a

bank of earth and a building. But it was shown that a person in an engine cab, coming from the west, could see persons on the trestle work at the point where Anderson was struck for a distance of 456 feet; that the whole of the man and the entire track could be seen, and the ties distinguished. There was a plank crossing at the east end of the first trestle, and one could go from there down to Third street with a wagon. Fifteenth avenue, within the limits of which Anderson was struck, had never been opened, nor had Sixteenth, Seventeenth, Eighteenth, and Nineteenth avenues to the westward. The train, at the time of the accident, had not passed all the traveled streets of Ashland. The railroad crossed the avenue nearly at a right angle, and the streets were at right angles with the avenues.

The plaintiff having rested, the defendant moved for a nonsuit, on the ground that there was not sufficient proof of negligence on the part of the defendant, and that the plaintiff's intestate was guilty of contributory negligence, but the motion was denied. It was testified on behalf of the defendant, among other things, by the engineer, that the train, at the time in question, was running along at the rate of eight or ten miles an hour. That the first he saw of Anderson was when he was within six or eight feet of him. That he could not see him before from the west end of the trestle, on account of the curve and the engine being in the way, but could see from the east end of the trestle westward 350 feet. That the first information he had that there was anything on the track was when the fireman gave him the signal to stop and apply the brakes; and, just about the time he had applied the brakes, the fireman said, " Man on the track!" and then he reversed the engine, and blew the whistle, and reached for the sand lever, and then he saw the man on the track six or eight feet ahead. That he was somewhere between the two trestles, about the middle, when

Anderson vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

the fireman gave the signal to stop.   Made a good stop. Could stop that train at about 150 to 200 feet from getting the signal, when going at the rate of six or eight miles an hour, at twenty miles an hour, about 400 feet; and at thirty-five miles, between 700 and 800 feet.   There was testimony on the part of the plaintiff tending to show that the train might have been stopped in a shorter distance.   The fireman testified, among other things, that the rate of speed was five or six miles an hour, and he was ringing the bell all the time.   When he first saw the men, it was difficult to tell where they appeared to be, on account of the curve. First discovered they were on the trestle when he gave the signal to stop.   Was then in view of the whole bridge.

It was admitted that no warning had been put up to keep the public off the bridge, and it was shown that no gates had been put up to keep people from crossing; that there were gates on some streets west of the depot towards the junction.   The evidence tended to show that the running time between Ashland and the junction was fifteen minutes, and the distance four and three-tenths miles.   The conductor testified, among other things, that on this occasion they were running at about the usual rate of speed after they left the switch where they bring lumber onto the track from the Bay Front line, which it was admitted was 2,250 feet west of the east end of the trestle on which Anderson was killed; and from the plat in evidence it appeared to be somewhat further than that distance from Ashland station to where Anderson was struck.   Evidence was given tending to show that, at the time, Anderson was drunk, so that he staggered; and, in rebuttal, to show that he was not drunk; that he had a swaggering gait; that he and Swanson were intimate friends, and sometimes walked arm in arm.

Defendant asked the court to direct a verdict in its favor, on the same grounds that it had moved for a nonsuit, but

this was denied. The court charged the jury that: "The evidence of the plaintiff tends to show that the track or trestle had been dedicated to the public at the point where the deceased lost his life, and that there had been no objection to such use made by the defendant. That, if you find that the track at such point had been so dedicated, it was the duty of the defendant to keep a careful lookout when approaching said point with the train and while crossing the same, and to keep its train, as far as practicable, under reasonable control, so that there would not be any injury done to any person crossing which might be prevented by due caution on the part of the defendant. That it was the duty of the engineer and fireman, if you find that this point was used by the public as alleged, to keep a careful outlook to avoid injury to any person crossing the said point which could be prevented by said outlook. The fact, if it be a fact, that Anderson was under the influence of intoxicating liquors did not relieve the defendant in any particular, but could only be considered for the purpose of showing that there was contributory negligence on the part of the deceased; for the defendant, if there were no contributory negligence on the part of the deceased, would be liable even if the deceased were intoxicated at the time he lost his life, the same as it would be if he were sober."

The jury found a general verdict for the plaintiff in the sum of $5,000, and also that, at the time of the accident, the train was running seventeen miles per hour.

For the appellant there was a brief by *Tomkins & Merrill* and *S. L. Perrin*, and oral argument by *W. M. Tomkins* and *Thos. Wilson*.

For the respondent there was a brief by *John F. Dufur* and *Cate, Jones & Sanborn*, and oral argument by *John F. Dufur* and *D. Lloyd Jones*.

Anderson vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

PINNEY, J.  1. The plaintiff's contention was that the defendant had been guilty of negligence in running its train at a dangerous and unlawful rate of speed, and in not keeping a proper outlook, and for failure to give timely warning of the approach of the train.  It was error, we think, to admit the testimony of the witnesses Weed and Oleson to the effect that for a few days after the accident the defendant ran its trains over the trestle quite slowly, and afterwards ran them at its former alleged dangerous rate of speed of thirty or thirty-five miles an hour.  The tendency of the testimony was to show, by implied admission, that the defendant habitually, down to the time of the accident, had been guilty of negligence in not using reasonable and ordinary care towards those who crossed the trestle, and towards the plaintiff's intestate as well; that the conduct of the defendant after the accident was an implied admission of fault on its part, and it soon after, in disregard of its alleged duties, returned to its former dangerous if not reckless course of conduct.  The question is the same in principle as in the case where an injury has been caused by defective machinery or an insufficient highway, and repairs have been made immediately or soon thereafter.  A party may have exercised all the care which the law required, and yet, after an accident, he may think it well to use additional caution or safeguards; and it is unjust to hold that the fact that he had done so is an admission of previous negligence, or that his return to previous methods evinced a disposition to persist in a negligent and dangerous course of conduct.  *Castello v. Landwehr*, 28 Wis. 530; *Lang v. Sanger*, 76 Wis. 75; *Morse v. M. & St. L. R. Co.* 30 Minn. 465; *Columbia & P. S. R. Co. v. Hawthorne*, 144 U. S. 202, 207; *Shinners v. Proprietors of L. & C.* 154 Mass. 168.

2. The question whether a party injured or killed on the

Anderson vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

track was drunk at the time, and whether his being drunk was contributory negligence, is, as a rule, a question of fact for the jury. The court stated to the jury that the fact, if it was a fact, that the plaintiff's intestate was under the influence of intoxicating liquors at the time he lost his life, "did not relieve the defendant in any particular, but could only be considered for the purpose of showing that there was contributory negligence on his part," adding: "For the defendant, if there were no contributory negligence on the part of the deceased, would be liable even if the deceased were intoxicated at the time he lost his life." This instruction, as given, is somewhat obscure and contradictory, and fails to express the idea the court probably intended to convey. The instruction left the jury to infer that, although drunk when he went into this position of great danger, as detailed in the evidence, the defendant might be liable "the same as it would be if he were sober." The instruction was not called for by the facts, and was, we think, misleading. We do not think that the plaintiff's intestate can be held free from contributory negligence if he was intoxicated, and in that condition walked out upon the trestle to a position of great peril to life or limb, and, in attempting to cross it, lost his life at the time and under circumstances given in evidence, and about which there is really no dispute. The instruction left it to the jury to conclude that there could be a recovery, although he was drunk at the time, and it was therefore misleading and erroneous, and it was erroneous in leaving the jury to conclude that there could be any recovery at all.

3. Walking upon the track of a railway has been held in many cases to be negligence *per se*, and sufficient to defeat a recovery in case of injury to the party by a passing train. *Moore v. Penn. R. Co.* 99 Pa. St. 301; *Bresnahan v. M. C. R. Co.* 49 Mich. 410; *McClaren v. I. & V. R. Co.* 83 Ind. 319; *Harty v. Central R. Co.* 42 N. Y. 468; *Tennenbrock v.*

*S. P. C. R. Co.* 59 Cal. 269; *Yarnall v. St. L., K. C. & N. R. Co.* 75 Mo. 575. But in general it is held that the question as to such an act, in the event of any injury, is one proper to go to the jury. Beach, Contrib. Neg. § 211; *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626; *Johnson v. C. & N. W. R. Co.* 56 Wis. 274. Courts universally characterize such an act as dangerous, and "a civil wrong of an aggravated nature, as it endangers not only the trespasser but all who are passing and being carried over the road." *Philadelphia & R. R. Co. v. Hummell*, 44 Pa. St. 375. The use of a railroad is exclusively for its owners or those acting under its authority, and the company is not bound to the exercise of any active duty of care or diligence towards mere trespassers on its track, to keep a lookout to discover or protect them from injury, except that, when discovered in a position of danger or peril, it is its duty to use all reasonable and proper effort to save and protect them from the probable consequences of their indiscretion or negligence. The company is also bound to provide for a careful outlook, in the direction in which a train is moving, in places where people, and especially children, are likely to be on the track, as in and about station grounds, depots, and regular crossings. This rule has been laid down in *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626, and *Whalen v. C. & N. W. R. Co.* 75 Wis. 654, and other cases; but its limit is best understood in view of the character of the places where the injuries in such cases occur, that is to say, such as are above indicated. The rule, manifestly, has no application to the main track of the company in other places; for, as to them, it is not bound to act upon the assumption that the public or wayfarers will trespass upon its rights. But after discovery that a party is on its track and in a position of danger, it is bound to the exercise of reasonable and appropriate care to prevent his injury, even though wrongfully on its track, and to take as prompt and

active measures as possible, if the person is helpless or unconscious or unable to escape.

It has frequently been held in this and other states that where the grounds of a railway are used by pedestrians for a considerable time without objection, or with acquiescence on the part of the company, a pedestrian crossing over the same thereby becomes a licensee, and is no longer to be considered as a mere trespasser acting at his peril, and that it is the duty of the company to exercise increased prudence and caution in operating its road at such point, and to keep a reasonably vigilant lookout to prevent injury or accident to those so crossing its grounds. *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626; *Whalen v. C. & N. W. R. Co.* 75 Wis. 654; *Davis v. C. & N. W. R. Co.* 58 Wis. 646; *Delaney v. M. & St. P. R. Co.* 33 Wis. 67; *Johnson v. L. S. T. & T. Co.* 86 Wis. 64. In all these cases the injury occurred at the station or on the depot grounds or yard, where parties would naturally resort and cross over the same, and where the agents and servants of the company could exercise a proper degree of care and watchfulness under the circumstances; but we have not met with any case, in which the point was necessary to the decision, where it has been held that a license can be implied from such acts of frequent use by pedestrians or wayfarers of the main track or bridges or trestles distant from such places as a pathway for travel, though we find that in other states the rule of implied license has been applied to parties frequently *crossing* the track at particular points other than regular crossings. In the case of *Hooker v. C., M. & St. P. R. Co.* 76 Wis. 542, it was reasonably clear, and was so found, that the company was guilty of negligence that caused the accident; and it appeared that "from a point 1,168 feet north of the bridge on the west side of the track, at the height of an engine cab, the whole track could have been plainly seen southward through the bridge, and to

Main street beyond, without any obstruction whatever." The case was rightly decided, and whether the injured party was a licensee or not was not material or necessary to sustain the judgment. In the *Davis Case*, 58 Wis. 646, the party injured was walking between the main track and a side track, across a public street, when he was injured by the explosion of the boiler of a locomotive that had been left unattended on a side track.

In the case of *Mason v. M. P. R. Co.* 27 Kan. 83, where the company had constructed a trestle or bridge over a creek and street on the plat of a city, and where the street had not been graded or improved, with a span of 160 feet over a stream sixty-five feet wide, and thirty feet above the water, and there were no railings to the trestle or bridge, and no foot planks on it, and the only way of crossing was by stepping from tie to tie, and the railway company was constantly using the track for the operation of its engines and cars, it was held that, in an action by a person injured while crossing the bridge by a collision with a hand car, no license could be implied from the custom of foot passengers to cross over the bridge, and evidence to show such user was held to have been properly stricken out. In *Tennenbrock v. S. P. C. R. Co.* 59 Cal. 269, in a similar case, it was held that one injured while walking over the bridge or trestle by a train was guilty of contributory negligence.

In the present case the defendant company had done nothing to invite or induce the public to use this trestle for a footway. It was on the main track, over which at least twelve regular trains crossed each day, and there were occasionally special trains, and trains and switch engines besides passed over it from the Bay Front track to bring lumber upon the main line. It was impossible to meet or have a train pass one on the trestle without almost certain death, or the greatest possible injury to the pedestrian. It was not planked over in any part, and was so narrow as to

leave no room on it outside of a passing train, and was so built as rather to repel than induce or invite foot travel over it. If the deceased was intoxicated, that was his own fault; and, if not, there was still less excuse for his being on the trestle. It did not become any the less dangerous on account of the frequency of its use, and we think that it would be contrary to sound public policy and a due regard to the safety of passengers over the road and operatives to hold that there can be any implied license to use the track along or between the rails or over trestle or other bridges as a way for foot travel.

But the statute of the state has declared the public policy of the state upon this subject beyond cavil or dispute. It is provided by sec. 1811, R. S., that " it shall not be lawful for any person, other than those connected with or employed upon the railroad, to walk along the track or tracks of any railroad, except when the same shall be laid along public roads or streets; provided, that this section shall not be construed to prevent any person from driving across any such roads from one part of his own land to another." "This legislation is justified," it was held in *McDonald v. C., M. & St. P. R. Co.* 75 Wis. 128, in construing the previous clause of the same section, as " not only being for the protection of the lives and property of those owning and engaged in the operation of the railroad, but also for the protection of the lives of those traveling upon it;" and a violation of the act was held to be contributory negligence. The consequence is that the plaintiff's intestate was a trespasser and unlawfully upon the trestle bridge at the time he came to his death. There could be no license that would be of any avail to allow him or others to walk over and along the track upon this bridge. The law forbids such use of the track, and makes the alleged implied license relied on nugatory and of no avail. Any other conclusion would entirely defeat the manifest

purpose of the statute, and render it wholly inoperative. The company was only bound to exercise the care and caution towards the deceased that they are required to exercise in the case of a trespasser, after it has been discovered that he is on the track and in a position of probable or actual peril.

It follows from these views that the instructions of the circuit court in respect to the right of the plaintiff's intestate to cross the trestle bridge, and the duty of the defendant towards him while crossing, were erroneous. Upon the case as made by the plaintiff, we think that the plaintiff's intestate, at the time he was killed, was guilty of negligence contributing to the result. Comment on the facts is unnecessary. They speak for themselves. The evidence on the subject of contributory negligence is clear and decisive. For these reasons the judgment of the circuit court must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the case is remanded for a new trial.

ORTON, C. J. I respectfully dissent from the decision or intimation in this case that a person walking along a railroad track, and injured by a passing train, cannot set up and prove an implied license of the company for his walking in such a place, except where the track shall be laid along a public road or street. The statute (sec. 1811, R. S.) which makes it unlawful for any person to walk along the track of any railroad has been in force since 1872, and yet there have been in this court numerous cases since that time in which it is held that, notwithstanding that statute, a person so injured may set up an implied license of the company to show that he was not a trespasser. The last case in which it has been so held was that of *Johnson v. L. S. T. & T. Co.* 86 Wis. 64. The opinion was written by the same learned justice. The person injured was

walking along the center of a switching track when injured
by the train, the most dangerous track of a railroad.   The
question of the plaintiff's implied license to walk there was
submitted to and found by the jury, and this was approved
by this court.   To *now* hold otherwise will overrule a great
many cases of this court, which ought to stand protected
by the maxim *stare decisis et non quieta movere.*

See note to this case in 23 L. R. A. 203.— REP.