LANGOWSKI, Appellant, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Respondent.

*April 11—April 29, 1913.*

*Railroads: Injury to trespasser on bridge: Gross negligence of engineer: Evidence: Instructions to jury: Special verdict: Form: Inspection of defendant's books, etc.*

1. In an action for personal injuries sustained by plaintiff, who was struck by an engine while crossing a river on a railway trestle, the evidence is *held* to sustain a finding by the jury that after the time he discovered plaintiff on the trestle the engineer was not guilty of gross negligence in respect to stopping the train so as to avoid the accident.

2. In view of the issue raised as to gross negligence, there was no error in charging the jury that plaintiff was a trespasser on the trestle and that such an act is made punishable by the laws of this state.

3. Referring to the testimony of a witness for plaintiff that the train could have been stopped before reaching the bridge, the court charged that the jury should carefully weigh the testimony of such witness, should consider first his competency and the experience he had had in stopping trains and making tests, and should give his evidence such weight as they thought it deserved. The court also referred to the testimony of witnesses for defendant as to actual tests, and stated that the defense claimed that such tests were made under conditions similar to those existing at the time of the accident and were more accurate and satisfactory as to the distance within which the train could have been stopped than the testimony of plaintiff's witness based upon his experience and calculations; and directed the jury to consider all the evidence. It appeared that plaintiff's witness had left the service of defendant about thirty days before the accident on account of a disagreement, and came into the case as a witness under peculiar circumstances, and had never stopped a train under the conditions in question. *Held*, that there was no error in the charge.

4. Nor was there error in a charge to the effect that if, after the engineer discovered plaintiff on the bridge, he could not by the use of reasonable and due care have stopped the train before plaintiff was struck, then the jury should not find the engineer guilty of gross negligence, but if he could have stopped the train by the use of due care in time to have prevented the accident the jury should give that fact its proper weight in determining whether he recklessly and wantonly ran the plaintiff down.

5. Questions proposed for special verdict which cover no issuable fact, or which relate to matters otherwise properly submitted, are properly refused.

6. A question proposed for special verdict as to "what amount of punitory damages will compensate the plaintiff," was properly refused.

7. A witness who was subpœnaed to appear before a court commissioner and produce the engineer's report of the accident and the books of defendant showing what kind of air-brake apparatus was used on the train in question, testified that he knew nothing about the air-brakes, had no access to any books pertaining to them, did not know whether the company had

records showing what kind of air-brake apparatus was in use on the day of the accident, and knew nothing about the report of the accident or whether defendant had such report. *Held,* that there was no error in denying a motion that the witness be required to produce such books and report for plaintiff's inspection.

APPEAL from a judgment of the circuit court for Portage county: JAMES O'NEILL, Judge. *Affirmed.*

This is an action brought to recover damages for personal injuries sustained by plaintiff by being struck by one of defendant's engines while crossing the railroad bridge of defendant at Stevens Point, Wisconsin. The complaint sets up two causes of action: one for ordinary negligence and one for gross negligence. Issue was joined on both causes of action. The jury returned the following verdict:

"(1) From and after the time that Engineer Gleason discovered the plaintiff or some member of his family on the bridge, was said engineer guilty of gross negligence in the operation and control of his engine and train, in respect to stopping the same so as to avoid the accident? *A.* No.

"(2) If you answer the first question 'No' you need not answer this; but if you answer the first question 'Yes,' then answer this: Was such gross negligence in the operation and control of his engine and train by the engineer the proximate cause of plaintiff's injury? *A.* ———.

"(3) In case the plaintiff is entitled to recover, at what sum do you assess his damages? *A.* $500."

Plaintiff moved for judgment upon the undisputed evidence, and for judgment notwithstanding the verdict, to amend the verdict, to set the verdict aside and for a new trial, which motions were denied and due exception taken. The defendant moved for judgment on the verdict and on the undisputed evidence, which motion was granted. Judgment was entered for defendant, from which this appeal was taken.

*A. L. Smongeski,* for the appellant, contended, *inter alia,* that after the engineer or fireman saw the plaintiff he had

knowledge that plaintiff was in a dangerous position, and it then became the duty of the members of the train crew to exercise all the means at hand consistent with the safety of the train to avert the accident, and the fact that plaintiff was a trespasser or was violating the law of the state became eliminated from the case at that moment. 1 Thomp. Comm. on Neg. § 25; 2 id. § 1735; *Louisville & N. R. Co. v. Morlay,* 58 U. S. App. 526; *Alabama G. S. R. Co. v. Moorer,* 116 Ala. 642, 22 South. 900; *Palmer v. C., St. L. & P. R. Co.* 112 Ind. 250, 14 N. E. 70; *Purcell v. C. & N. W. R. Co.* 109 Iowa, 628, 80 N. W. 682; *Heddles v. C. & N. W. R. Co.* 77 Wis. 228, 46 N. W. 115; *Rideout v. Winnebago T. Co.* 123 Wis. 297, 101 N. W. 672; *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195, 207, 58 N. W. 79. Trial judges in charging the jury should not go into the testimony in detail, or give special significance to the facts testified to on one side only of the case. *Coman v. Wunderlich,* 122 Wis. 138, 99 N. W. 612; *Conway v. Mitchell,* 97 Wis. 290, 72 N. W. 752; *Hopkins v. Rush River,* 70 Wis. 10, 34 N. W. 909, 35 N. W. 939; *Kavanaugh v. Wausau,* 120 Wis. 611, 98 N. W. 550.

For the respondent there was a brief by *W. A. Hayes* and *Fisher, Hanna & Cashin,* and oral argument by *Mr. Hayes.*

KERWIN, J. The principal assignments of error in this case involve the question of the sufficiency of the evidence. In other words, Is the verdict supported by the evidence? The evidence shows that the plaintiff was injured while crossing defendant's trestle over the Wisconsin river at Stevens Point. Defendant's trestle is about 600 feet long and about twenty-five feet above the water. The Wisconsin river, over which this trestle is constructed, flows in a southerly direction and is about three fourths of a mile west of defendant's depot. The floor of the trestle consists of ties, guard rails and track rails, and is not planked. The ties are about twelve

feet long and eight inches wide, with spaces between them varying from four to six inches. There is no highway for a considerable distance from either end of this trestle. About 1,200 feet west of the river is a curve through a deep cut, so that from the trestle one cannot see a train approaching from the west until it emerges from the cut. There was at the time of the injury, at each end of the trestle, a sign upon which was written "Dangerous. All persons are forbidden to walk upon the tracks under penalty." Twenty trains a day pass over the trestle and it requires about fifteen minutes to walk across it. There are between the two ends of the trestle forty-four places about twenty-eight feet apart where a person can stand aside while a train passes.

On Sunday, November 29, 1908, the plaintiff, his wife, and four children, three girls and a boy, ranging in age from six to thirteen years, entered upon this trestle from the east end. They were on their way home, and could have gone without crossing the trestle by way of regularly traveled streets. Plaintiff had lived in Stevens Point thirty-eight years and was familiar with the situation. The train which struck plaintiff, when running on schedule time, had about fourteen minutes to make the run from Junction City to Stevens Point, a distance of eleven miles. About the time plaintiff and his family started westward over the trestle, defendant's limited passenger and mail train started eastward from Junction City. The girls preceded plaintiff, and when about half way across the trestle heard the whistle of the approaching train, notified plaintiff, and immediately started to run. They got across the trestle, stepped aside, and escaped injury. The plaintiff, his wife and boy were struck, the wife being killed instantly, the boy's skull fractured, and the plaintiff injured. The train consisted of an engine and seven cars equipped with Westinghouse automatic quick-action air-brakes. On account of the curve the engineer could not see the trestle until about 700 feet from it. The fireman

could see it somewhat sooner, and as the train came out of
the cut he saw persons upon the trestle near the west end and
immediately told the engineer. The speed of the train going
out of the cut and onto the straight track enabled the engineer
to see the plaintiff about the time the fireman saw him. Upon
seeing plaintiff the engineer instantly put on all braking
power, applied the sand, and the train came to a stop upon
the trestle after striking plaintiff.

It is perfectly clear from an examination of the whole evi-
dence that it fully supports the finding of the jury that the
engineer was not guilty of gross negligence in the operation
and control of his engine and train in respect to stopping the
same so as to avoid the accident. We shall therefore spend
no time in discussing this proposition. The plaintiff care-
lessly and recklessly, with the intention of crossing, went
upon the trestle with his family, where he had no right to be,
and the operators of the train had no reason to believe that
any person would be upon the trestle or attempt to cross it in
the face of imminent danger. From the time the engineer
and fireman saw plaintiff or any member of his family until
they were struck, only a few seconds elapsed, and the evi-
dence shows very clearly that during that time everything
that could reasonably be done by the engineer to stop the
train was done.

Several errors are assigned in the admission and exclusion
of evidence, but they are wholly without merit and we shall
take no time in discussing them.

Appellant also complains of the charge to the effect that
the court told the jury that the plaintiff was a trespasser on
the trestle on the day of the accident and that such an act is
made punishable by the laws of this state. There was no er-
ror in this charge. It was proper in view of the issue raised
respecting the gross negligence of the engineer. *Pinoza v.
Northern C. Co.* 152 Wis. 473, 140 N. W. 84; *Anderson v.
C., St. P., M. & O. R. Co.* 87 Wis. 195, 58 N. W. 79.

Counsel for appellant also complains of the following portion of the charge:

"The plaintiff has offered the testimony of witness Menzel to show that the train could have been stopped before reaching the bridge. It will be the duty of the jury carefully to weigh the testimony of this witness. You will consider first his competency, the experience he has had in stopping trains and making tests, and give his evidence such weight as you think it deserves. The defendant has offered testimony of several witnesses who have made actual tests under what is claimed to be similar conditions, as far as practicable, to determine the distance within which a similar train could be stopped. The witnesses have testified to tests made on last Thursday, Friday, Saturday, and Sunday. It is the claim of the defense that these tests were made under practically similar conditions to those existing on the day of the accident, and it is further claimed that these actual tests are more accurate and satisfactory as to the distance within which the train could have been stopped than the testimony of the plaintiff's witness based upon his experience and calculations. The witnesses for the defense who have testified state that under the conditions observed the train could not have been stopped before reaching the bridge. Several of them give it as their opinion that under the conditions assumed to have existed on the day of the accident, the manner in which Engineer Gleason applied the brakes and operated the train was the proper way in which to have controlled the speed and made the stop in the shortest practicable space."

"The court will not attempt to refer particularly to the evidence on either side. It will be the duty of the jury to consider all this evidence for the purpose of determining whether the train could have been stopped before reaching the bridge and whether the engineer was guilty of such reckless and wanton conduct as amounted to gross negligence."

There was no error in this portion of the charge. It appears that the witness Menzel referred to left the service of defendant about thirty days before the accident on account of disagreement and came into the case as a witness under peculiar circumstances and had never stopped a train under the circumstances in question.

The following portion of the charge is also excepted to:

"If the jury find that after the engineer discovered the plaintiff or some members of his family on the bridge the engineer could not, by the use of reasonable and due care, have stopped the train before the plaintiff was struck, then it follows that the jury should not find the engineer guilty of gross negligence. A finding to this effect will be decisive in answering the question in the verdict. If the jury find that after such discovery of the persons on the bridge the engineer could have stopped the train by the use of due care in time to have prevented the accident, they will give such finding its proper weight in determining whether the engineer recklessly and wantonly ran the plaintiff down."

There was no error in this part of the charge.

Counsel for appellant also assigns error on refusal of the court to submit to the jury certain questions requested by appellant. Some of these requests cover no issuable fact, hence were properly refused. The seventh and eighth relate to the gross negligence of the engineer and also to the amount of damages, and these questions were submitted in proper form by the court. The ninth relates to the amount of punitory damages which would compensate plaintiff, and this was properly refused.

The tenth assignment of error relates to the denial of plaintiff's petition for inspection of the books of the defendant for the purpose of ascertaining what kind of air-brake apparatus was used on the train in question and the report of the accident by the engineer to the defendant. One Millington was subpœnaed to appear and produce the books of the company and report of the accident. He appeared pursuant to the subpœna and submitted to full examination, but did not produce the books nor the report for the reason that he did not have possession of them. He testified that he knew nothing about the air-brakes and had no access to any books pertaining to them, and did not know whether the company had records showing what kind of air-brake apparatus was in use on the day of the accident; that he knew nothing about

the report of the accident or whether the defendant had such report. It is therefore clear that no error was committed in denying plaintiff's petition for inspection.

In the instant case there was such a lack of evidence to support the charge of gross negligence that it is quite clear that, even if error had been committed under the several heads complained of, it could not in any way have prejudiced appellant. Further discussion of the case seems unnecessary. It is plain that the plaintiff had a fair trial and no prejudicial error was committed.

*By the Court.*—The judgment of the court below is affirmed.