[No. 12992.   Department One.   February 7, 1916.]

DAVE BENN, *Respondent*, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Appellant*.[1]

RAILROADS—INJURY TO ANIMALS ON TRACK—NEGLIGENCE—EVIDENCE —SUFFICIENCY. The court cannot find, as a matter of law, that a freight train of sixteen cars, going twenty-eight to thirty miles an hour, could be stopped within a distance of six hundred and fifty feet, especially where all the evidence on the subject was to the effect that the engineer had immediately made every effort to stop the train and could not do so within that distance.

SAME—DUTY TO FENCE—STATUTES. A railroad company is not compelled to fence its depot and side tracks at a station outside of an incorporated city, under Rem. & Bal. Code, §§ 8730, 8731, requiring fencing outside of any incorporated city "and outside the limits of any sidetrack or switch" and requiring cattle guards at highway crossings "and at each end of such sidetrack or switch, outside of any incorporated city."

SAME—INJURY TO STOCK ON TRACK—FAILURE TO FENCE—PROXIMATE CAUSE. Where the law does not require the fencing of station grounds or switches outside incorporated cities, the want of a fence is not the proximate cause of the death of stock killed on the tracks within such grounds.

SAME—INJURY TO STOCK ON TRACK—FAILURE TO FENCE—NEGLIGENCE—PRESUMPTIONS. Under Rem. & Bal. Code, §§ 8730, 8731, requiring a railroad to fence its tracks and raising a presumption of negligence in the event stock is killed at a point where the track is not fenced, an omission to fence only makes a *prima facie* case of negligence which the company may overcome by evidence.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered March 29, 1915, upon findings in favor of the plaintiff, in an action for damages for stock killed by a railway train. Reversed.

*Geo. W. Korte* (*Morgan & Brewer*, of counsel), for appellant.

*E. S. Avey*, for respondent.

CHADWICK, J.—Appellant maintains a flag station known as Balch, in Chehalis county. The place is not incorporated

[1]Reported in 154 Pac. 1082.

and is no more than a station house and a loading ground which accommodates a side or passing track. At one end of this tract of land, which is two hundred by about nineteen hundred feet, there is a county road. At the other end is a fence with a cattle guard. The respondent was the owner of three colts which wandered from his field and were killed about three o'clock in the morning of November 1st, 1913, by a freight train belonging to the appellant.

The only question in this case is whether the engineer did all that he could do to stop his train before striking the animals. The station ground is approached on a slight curve. The colts were observed first by the fireman. At that time they were about two hundred feet in front of the locomotive. Because of the curve, they were not seen by the engineer until the engine had straightened out on the track. When observed by the fireman, he immediately called to the engineer, who shut off the steam and set the air. The testimony of the engineer and fireman would indicate that the colts ran about four hundred feet before they were overtaken. The train was a freight train consisting of sixteen cars, fairly light, and going at from twenty-eight to thirty miles an hour. The court below held, as a matter of law, that the engineer should have stopped the train within six hundred or six hundred and fifty feet, and that, if he had done so, the stock would not have been injured. A judgment for the value of the colts was entered in favor of the respondent.

There was no testimony tending to show within what distance a train, running at the rate mentioned, could have been stopped so as to avoid the injury. While it is possible that a court would be warranted in holding that a train could be stopped within a distance so great that the minds of reasonable men would not differ upon the question, we cannot so hold in this case. Where a fact depends upon the application of some scientific principle or upon the use, or the consequences of the use, of machinery which requires

skillful operation or manipulation, courts rarely ever indulge a presumption of law or compel a conclusion of fact, in the absence of positive testimony to sustain it. The only testimony in the case going to this point is that of the engineer. He said, in reply to the question:

"Q. In what distance can you stop with that size train, running at that rate of speed? A. Freight trains, some trains would stop in five hundred feet, while fifteen hundred feet it would take to stop others. The breaking power on freight trains is very variable and hard to state; but on a rule a thousand feet."

But, granting that the stopping of a freight train consisting of a locomotive and sixteen cars, going at about thirty miles an hour, is a matter of which the courts and, as is contended by respondent, juries, will take notice and find of their own knowledge, or, in other words, treat as a matter of legal conclusion or inference, we have found at least one case where it appears that a train consisting of a locomotive and two passenger coaches, going at six or eight miles an hour, could be stopped in from one hundred and fifty to two hundred feet; at thirty-five miles an hour, in from seven hundred to eight hundred feet. See *Anderson v. Chicago, St. P., M. & O. R. Co.*, 87 Wis. 195, 58 N. W. 79, 23 L. R. A. 203.

Counsel relies on *Timm v. Northern Pac. R. Co.*, 3 Wash. Terr. 299, 13 Pac. 415. Here the train consisted of sixty or seventy cars loaded with coal.

"What was the description of the train otherwise, or of the whistle blast, or of the railway grade, or of the engine, or how far from the cattle the train was when they could have been first sighted from it, or within what space the train could have been stopped, or how the speed of the train after sighting the cattle, or as it neared them, was as compared with its speed before, does not transpire."

Although negligence is not to be presumed, and it was not by any means clear that the engineer was in fault, the court, after a *consideration of the evidence, assumed* that the train

might have been stopped within the space of two hundred and seventy yards, which is eight hundred and ten feet. It is proper to draw conclusions from established or admitted facts and, possibly, in the absence of all testimony, from the physical facts; but courts cannot supply the want of facts by resort to assumptions or hypothesis. In any event, the court did not *assume* to decide the question by resort to judicial knowledge, and the case can have no bearing where, as in this case, a reasonable effort, or rather an effort that is not shown to be unreasonable, was made to stop the train.

After finding that a train could be stopped within a distance of six hundred and fifty feet, the trial judge says:

"The employees of defendant company in charge of the engine evidently expected the horses would run off at the side of the track and did not exercise the proper caution and were negligent in not stopping the train within that distance."

We found nothing in the testimony, and we have read it all, to sustain the finding that the employees of appellant evidently expected the horses would run off on the side of the track. On the contrary, the engineer testifies that he endeavored to stop and that, if he had had another one hundred or one hundred and fifty feet to go, he would not have come in contact with the animals at all, that he could think of nothing he had left undone, and that he was mindful of the danger to himself and his fireman in striking the stock.

The only thing we find in the record which could have misled the court is the following:

Q. "Isn't it a fact that, although you don't aim to hit the stock, sometimes you like to give them a chase down the track? A. Not. at that speed; because we might get the benefit of the fun. Q. Have you ever been ditched that way? A. No, but I have helped pick up fellows that was. I have heard of bulls butting engines off the track. Q. You feel quite sure that you did everything that you could do to avert that accident? A. I did."

Respondent suggests in his brief that, notwithstanding the grounds upon which the case was made to rest, appellant

is liable under the statute, Rem. & Bal. Code, §§ 8730, 8731 (P. C. 433 §§ 89, 91), in that Balch station is not an incorporated city or town and it was, therefore, the duty of the company to fence its track. The statute reads:

"Every person, company or corporation having the control or management of any railroad shall, within six months after the passage of this act, outside of any corporate city or town, *and outside the limits of any sidetrack or switch,* cause to be constructed and maintained in good repair on each side of said railroad, along the line of said right of way of such person, company or corporation operating the same, a substantial fence, and at every point where any roadway or other public highway shall cross said railroad, a safe and sufficient crossing must be built and maintained, *and on each side of such crossing and at each end of such sidetrack or switch, outside of any incorporated city or town, a sufficient cattle-guard:* Provided, that any person holding land on both sides of said right of way shall have the right to put in gates for his own use at such places as may be convenient."

We have italicized the part relied on. We confess our inability to understand the meaning of the italicized words. They cannot mean that a cattle guard is required at each end of every switch outside of an incorporated city or town, for "such" switch is the switch first mentioned in the act and it is, by express words, exempted from the fence features of the law. It follows, if a company is not required to fence its depot or side tracks or switch, that a cattle guard at the end of each switch would serve no purpose. Indeed, we cannot imagine a condition calling for the application of the words relied on. There being no law compelling the company to fence its side tracks, the conclusion follows that the want of cattle guards was not the proximate cause of the injury.

The statute is unavailing to respondent for another reason. An omission to comply with its terms does no more than to put the company under a rule of evidence, that is, to

meet a *prima facie* case, or a presumption of negligence in the event that stock is killed at a point where the track is not fenced. Granting that respondent made out a *prima facie* case, we think that appellant overcame it and should prevail.

Reversed and remanded with directions to dismiss.

MORRIS, C. J., MOUNT, FULLERTON, and ELLIS, JJ., concur.