# CASES DETERMINED

AT THE

# January Term, 1923.

————————

ROUTT, by guardian *ad litem*, Respondent, vs. LOOK and
another, Appellants.

*December 6, 1922—March 6, 1923.*

*Automobiles: Trespassers: Child climbing on moving truck: Auto-
mobiles as attractive nuisances: Negligence of driver: Duty
to ascertain presence of child.*

1. One owes no duty to a trespasser except that of refraining
   from wilful and intentional injury.
2. Where a person leaves an instrumentality or premises where
   children have a right to be, or where by reason of their
   childish instincts they are likely for some apparent reason
   to be attracted, the owner must exercise ordinary care under
   all the circumstances to prevent injury to them.
3. In an action for injuries sustained by a three-and-one-half-
   year-old child in falling from defendant's truck, the evidence
   is *held* insufficient to sustain a finding that the driver was
   guilty of intentional misconduct or that he knew that the
   child was in or upon the truck.
4. Where one of the defendants and an employee loaded an auto-
   mobile truck with boards in an alley and went away and left
   it, and later the other defendant, who came to drive the
   truck away, allowed one of several children who were in
   the vicinity of the truck to ride with him in the seat, and after
   he started the truck two other children climbed on the run-
   ning-board in a position of comparative safety, and with-
   out his knowledge a three-and-one-half-year-old child also
   climbed to an insecure position on the truck, from which he
   fell and was injured, the driver was not chargeable with
   knowledge of the presence of such child.

Routt v. Look, 180 Wis. 1.

5. The driver, because he knew that two children seven years of age, without invitation, had climbed upon the truck, is not required to assume that a third child, three and one-half years old, had grabbed onto the side and was maintaining himself in a position of great peril.

6. In cases where the attractive-nuisance theory is not applicable, the duty of a driver of an automobile truck does not arise unless and until he is advised or knows a child is in a perilous situation; and if there was evidence that the driver knew of the position of the plaintiff, the question of his duty under the circumstances would be for the jury.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

Personal injury. The defendant *Samuel Look* was engaged in the junk business, and his son, *Joseph Look,* twenty-four or twenty-five years of age, was his employee. On the 17th day of June, 1920, the defendant *Samuel Look,* with the assistance of another employee, loaded a truck of the type known as Smith Form A truck with junk and lumber. When loaded the load was as high as the cab on the truck. The work of loading was completed about 12 o'clock m. The loaded truck stood in the alley between Tenth and Eleventh streets in the city of Milwaukee, the alley running north to Vine street and south to Sherman street. The truck was facing north. On the truck there was a cab, and over the rear part, the truck being a regular Ford car reconstructed, was a box, and on the upper edge of the box there was a flaring board which left the box at an angle of about forty-five degrees. The truck stood about an hour after being loaded. *Joseph Look,* at the direction of his father, went from his home to the alley for the purpose of driving the truck out. Up to this point there is practically no dispute in the testimony. It is the claim of the defendant *Joseph Look* that he proceeded to drive the truck north toward Vine street; that he saw no children on or around the truck, and that the first time he knew of an accident was when he stopped the truck to remove a basket

which was in the alleyway.   On behalf of the plaintiff it is claimed that four boys were in the vicinity of the truck— Joseph Gallowitz, at the time of the accident nine years of age, who testified he was sitting on the seat with *Joseph Look* with the permission of the latter; that as *Joseph Look* started the truck two other boys, John Routt, a brother of the plaintiff, and John Gallowitz, at the time of the accident about seven years of age, climbed onto the truck and stood with their feet on the step or short running-board, hanging onto the side of the truck with their hands.   It appears that the plaintiff at the time of the accident, a child three and a half years of age, grabbed onto the flaring edge of the box or onto a board standing upright to hold the load on, with his hands, and held on without support from his feet; that he fell from this position and was injured either by having his legs run over by the rear wheel of the truck or coming in contact with the chain drive.   At any rate, in some way he sustained injuries which resulted in the loss of the right leg, amputation near the hip joint being necessary.

The case was submitted to a jury and the jury by special verdict found:

(1) That *Joseph Look* knew before *Stephen Routt* was injured that he was riding on the side of the truck in a perilous position.

(2) That *Joseph Look* knew before *Stephen Routt* was injured that some child was attempting to ride on the side of the truck.

(3) That *Joseph Look* did not exercise ordinary care to keep children away from the side of the truck.

(4) Such failure of *Joseph Look* to exercise ordinary care was the proximate cause of the plaintiff's injury.

(5) *Joseph Look* was guilty of a wilful act of negligence in the operation of the truck at the time *Stephen Routt* was injured.

(6) That such act of wilful negligence on the part of *Joseph Look* was a proximate cause of the injury sustained by *Stephen Routt;* and

(7) Assessed the plaintiff's damages at the sum of $9,000.

Routt v. Look, 180 Wis. 1.

There were the usual motions after verdict, the plaintiff had judgment upon the verdict, and from that judgment the defendants appeal. Other facts are stated in the opinion.

For the appellants the cause was submitted on the brief of *Maurice A. McCabe* and *Freeman & Bendinger,* all of Milwaukee.

For the respondent there was a brief by *Brennan & Lucas* of Milwaukee, and oral argument by *Martin J. Brennan.*

The following opinion was filed January 9, 1923:

ROSENBERRY, J. The question presented here is: Does the evidence sustain the finding of the jury to the effect that the defendant *Joseph Look* knew, before *Stephen Routt* was injured, that he was riding on the side of the truck in a perilous position? There is an irreconcilable conflict in the testimony given by the little boys and that given by *Joseph Look,* the driver of the truck, at the time the injury occurred. The jury having found in favor of the plaintiff, we accept as true the testimony given by the boys and limit our consideration of the case to the question of whether or not it sustains the verdict.

Joseph Gallowitz, at the time of the accident nine years of age and at the time of the trial eleven years of age, testified that four of the boys were playing together in the alley and saw the truck being loaded.

"I helped with two boards and threw them on the truck. Then I asked the man if I could have a ride and he said I may have one and I went in and Johnny Routt and my brother they saw me go into the truck and they were sitting on the running-board. I was sitting by the driver in the seat. The other little boys did not help throw any boards on the truck. I didn't see *Samuel Look* there. There were two men loading up the boards."

It seems to be undisputed, however, except for the testimony of this boy, that *Samuel Look* and his employee did load the truck; that it remained in the place where it was

Routt v. Look, 180 Wis. 1.

loaded for nearly an hour before *Joseph Look* arrived upon the scene for the purpose of driving it out of the alley. Joseph Gallowitz describes the incident, so far as *Stephen's* conduct was concerned, as follows:

"When he [*Look*] began to go, he did not look around. I didn't see him look around at any time after he started up or before he started up. I know he saw these little boys on the side of the truck because he bended over. I was sitting here and he put his head over and he looked in back of the truck on the left side of the truck and then he went about twenty or thirty feet. There was a basket in the alley ahead of the truck. He told Johnny Routt should take it away. It was in the middle of the alley. Johnny Routt went ahead and took the basket away and put it on the side. Then *Steve* he noticed we were in the truck, then he came running, and he was hanging on a board; then he was riding; after the basket was in the way, he was pretty near out of the alley and when his leg was caught in the chain and his leg was run over and my brother saw it and began to holler to the driver he should stop and then he stopped. When the truck stopped *Steve* was about two feet from the truck. I don't know whether the wheels went over his leg. The boards were so high I could not look out. The other little boys were sitting on the running-board. I had ridden with the driver about twenty-five or thirty feet. He drove kind of slow. We were playing right around near the truck. Nothing was said we should get away from the truck. When I asked him for a ride, he said all right, and then I went in."

John Gallowitz, brother of Joseph, at the time of the accident seven years of age and at the time of the trial nine, testified:

"My brother first of all he loaded two or three boards; then he asked the driver for a ride and the driver said he could have a ride. My brother then went in and he was sitting with him in the seat. First he asked him, I heard that, then Johnny Routt and I walked a little away by the post. We were standing by the post. Little *Steve* he was not far from us. Then while I was standing all at

once as the truck went I saw my brother in the seat where the driver was and I saw there was room on the fender and I jumped on the fender and Johnny Routt, there was space and he jumped on the fender too. *Steve* sees there was no room on the fender and he jumped on a board and as the truck went it was kind of shivery and his clothes got caught into the wheel. The driver looked back to see if the boards were not falling. He told Johnny Routt to take the basket out of the way. Little *Steve* got under the wheel. As soon as I hollered he should stop, then he looked up and saw him; there was an open space where a little window was supposed to be, and no glass in there, he stuck his head out and saw little *Steve* under the wheel. *Steve's* clothes got caught into the wheel and that pulled him down. I know he saw me on the fender because he turned as he bent over my brother to look out, he saw little *Steve;* he only wanted to look at the boards, and he saw little *Steve,* and didn't say anything to him, turned sideways, and he saw us on the fender. *Steve* grabbed onto a piece of lumber on the same side—we were on the left side—he was on the left side and we were on the left-hand side. Where *Steve* got on was further away in the back of the truck than where we got on."

John Routt, a brother of the plaintiff, at the time of the accident seven years of age, testified:

"We saw the men loading the truck and then Joe helped the men put two or three boards on the truck and then he asked the man for a ride. The man said yes he could have a ride and he got on the truck. We were by the telephone post, about twenty or twenty-five feet away from the truck. Joe asked for a ride and as soon as he started the truck on, then Johnny said, 'Let's jump on the running-board,' and then I say 'yes' and then me and Johnny went and sat on the running-board. Little *Steve* followed us right away after that. There was not room enough by the running-board and then we told him to get in the middle, but he didn't want to, so he hanged on one of the boards. I didn't see the driver. The driver looked back. He didn't see *Steve.* He looked back on the lumbers, but he saw some of *Steve's* head, but didn't see much, he saw just a little space

because he could not see him, the lumber was too high. He saw Johnny Gallowitz and me sitting on the running-board. There was a basket in front of the truck and he said one of us boys should go to it and take the basket away and I jumped off and took the basket away and went by telephone post and as soon as he start on, I start and jump on the truck, and then *Steve* could not hold so tight, and he slipped off, and he got caught, clothes got caught in the chain. Then I didn't see *Steve* hanging on the board, and as soon as the auto started up, then *Steve* started hollering and I looked right away, and I seen *Steve* laying down next to the wheel."

The testimony of *Joseph Look,* the driver, is that the boy was injured while on the right side of the truck. The boys, however, testify that it was on the left side. The testimony of these children is, as one would expect it to be, somewhat contradictory and inconsistent. It was a moment of considerable excitement, and every effort should be made to reconcile and give effect to their testimony. The testimony of Joseph Gallowitz to the effect that the driver bent over him and looked out would seem to indicate that the boys were on the right side of the truck. If they were not, then the testimony of Joseph Gallowitz to the effect that the driver saw them by bending over and looking out on the right side can be of no effect. The testimony of the other boys is quite clear to the effect, although they say the driver saw *Stephen,* that it would have been impossible for him to have done so under the conditions they describe. Under such circumstances their testimony to the effect that he saw *Stephen* can be given very little if any weight. Taking the testimony of the boys together, it appears quite clearly that Joseph Gallowitz, by permission, was riding on the seat with the driver. The truck being a converted Ford was a left-hand drive. At the time the truck started, *Stephen,* John Routt, and John Gallowitz were standing some twenty or thirty feet away; that as the truck proceeded they got onto the running-board or fender where they were seen by the

driver. It appears that *Stephen* was invited by them to mount the running-board, but refused to do so and either grabbed hold of the flaring board on the box or one of the upright pieces put in to hold the lumber on the truck and in that position attempted to ride out of the alley.

We can find no testimony in the case which supports a finding that the driver ever knew that *Stephen* was in this perilous position. The most that can be said is that he knew of the three boys who were standing by the telephone pole; two were riding on the fender in a place of comparative safety. While there are statements made by the boys to the effect that the driver saw *Stephen,* their testimony considered as a whole shows that he could not have seen him under the circumstances.

The legal principles applicable here are frequently invoked in cases where boys attempt to catch onto and ride moving trains. Whether or not the older boys were trespassers is a question which need not be determined. The use of the word "trespassers" in this connection has been severely criticised. However, it is used not to impute to children any wrongful purpose or wrongful intent nor to charge them with any legal or moral delinquency, but simply to describe their legal relation to the owners of the property upon which they go without permission. In this case the boys were at a place where they had no right to be, and except for their tender years the duty which the driver of the truck owed to them would be that owing to a trespasser. It has long been the established law of this state that a person owes no duty to a trespasser except that of refraining from wilful and intentional injury. *Klix v. Nieman,* 68 Wis. 271, 32 N. W. 223; *Schug v. C., M. & St. P. R. Co.* 102 Wis. 515, 78 N. W. 1090; *Bonniwell v. Milwaukee L., H. & T. Co.* 174 Wis. 1, 182 N. W. 468.

To this rule there is one very notable exception and that is where a person leaves an instrumentality or premises

where children have a right to be or where children by reason of their childish instincts are likely for some apparent reason to be attracted. Under such circumstances it is held that the owner must exercise ordinary care under all the circumstances to prevent injury to children. It is not contended here that the case at bar falls within this exception. The truck, an ordinary and very common type of vehicle, was at the time passing along a public alley or way in a reasonable and lawful manner and for a lawful purpose.

The testimony shows quite clearly that John Routt and John Gallowitz were not invited to ride. The testimony is very indefinite, but there is nothing to indicate that they were in a perilous position or that as to them the driver in any way failed in the performance of his legal duty. The alley over which the truck was passing had recently been paved. It was level, smooth, and the boys testified that the driver drove very slowly. In one place they describe themselves as sitting on the fender, in another place they seem to indicate that they jumped upon the fender. Whatever their true situation was, it does not appear to have been perilous.

The plaintiff was at the time of the accident three and one-half years of age. There is no evidence as to his physical or mental development and we must assume, therefore, that he was the average normal child. From the fact that he was able to grab onto the side of the moving truck and hang on for some distance at least indicates that he was physically active and possessed of considerable strength considering his years. Under these circumstances, can it be said that the driver of the truck was chargeable with knowledge that *Stephen* was on or about the truck and owed him the duty of stopping the truck to make an inspection to discover what the fact was? We find no evidence whatever to sustain the finding of the jury that the driver was guilty of any intentional or wilful act of misconduct toward *Stephen*, nor do we find any credible evidence to the effect that the

driver of the truck in fact knew that *Stephen* was in or upon the truck.

The question then remains, Was he chargeable with such knowledge as a matter of law under all the facts and circumstances? It is contended that this case falls within the rule laid down in *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60. In that case a street railway company was engaged in stringing wires in a public street and part of their equipment consisted of a snatch block pulley. While a boy six years of age was amusing himself with a rope near the snatch block, the team was started and his hand was drawn into the pulley and severely injured. It was held that one who maintains, in a place where children of tender years have a right to be, an object or condition which he knows or ought to know is likely to attract them to interfere therewith to their peril, owes a duty to prevent injury to such children. In that case it is to be noted that the child was in the street, at a place where it had a right to be, and it was expressly held that under the circumstances of that case he was not a trespasser although he was playing with the rope which was attached to the block and defendant's employees knew of his presence.

Unless it is to be held that the driver of a truck proceeding along the public way is bound when he passes children to stop his truck and inspect it to discover whether or not any of them have attempted to mount it, we see no grounds upon which the defendants may be held liable for the benefit of the plaintiff. While the question has never been before this court, it has been held in other states that he is not required to look out for children who may attempt to climb onto the sides or the rear of his vehicle. *Hebard v. Mabie,* 98 Ill. App. 543; *Smith v. Peter Schoenhofen B. Co.* 201 Ill. App. 552; *Gamble v. Uncle Sam Oil Co.* 100 Kan. 74, 163 Pac. 627; Huddy, Automobiles (6th ed.) sec. 420.

In *Ostrander v. Armour & Co.* 176 App. Div. 152, 161 N. Y. Supp. 961, it is said:

"It is a care of serious moment imposed upon the busy teamster to make a search around his car lest a child too young for discretion and undirected by parents has tucked herself away in an obscure place beyond the casual and convenient notice of the driver. The driver, by such rule, in responsibility supersedes guardians and other custodians in watchfulness of the children on each block where his business requires him to stop. An automobile is a legitimate vehicle on the street, and entitled to stop without accumulating children upon it. I am not convinced that it is the usual duty of a chauffeur to search for infantile trespassers ensconced on the far side of his car."

In *Gamble v. Uncle Sam Oil Co., supra,* it is said:

"The attractive-nuisance doctrine cannot be extended to include motor trucks, nor made applicable to cases like this one. Motor trucks are in common use, and no more attractive nuisances than are drays and other ordinary vehicles used for carrying persons and goods along the streets and highways."

It is argued, however, that, because the two older boys were upon the truck, the driver is by reason of that fact chargeable with notice that the other boy was upon or at least might be upon the truck. We do not consider this argument tenable. It requires the driver to assume that, because two boys seven years of age had without invitation climbed onto the side of the truck in a place of comparative safety, the third boy, three and one-half years of age, had grabbed onto the side of the truck and was maintaining himself in a position of great peril. We are of the opinion that the driver is required to make no such assumption; that in cases where the attractive-nuisance theory is not applicable, the duty of a driver to look out for the safety of a child does not arise unless and until he is advised or knows or ought to know that the child is in a perilous situation.

Considering the tender years of the plaintiff, if there was evidence tending to show that the driver knew of his presence upon the truck, the question of his duty under such circumstances would no doubt be a question for the jury. *Ziehm v. Vale,* 98 Ohio St. 306, 120 N. E. 702, 1 A. L. R. 1381, and cases cited in note.

A child of that age could not very well be upon the outside part of a truck anywhere and not be in a perilous position, but the driver is not required to assume that a child of such years will climb upon the truck, nor is he bound to stop his truck where he passes a group of children and inspect the truck to see whether or not a child has attempted to climb upon the truck.

There is nothing here to show a custom by virtue of which children were permitted to ride upon this truck and that such custom was known to the boys playing in the vicinity of the loaded truck, so that the case is not within the rule laid down in *Madden v. S. L. Mitchell A. Co.* 21 Ga. App. 108, 94 S. E. 92.

This case must also be distinguished from cases where children have clustered about a truck which has stopped in a street. It is conceded here that at the time the driver started the truck all of the children were in a place of safety, one on the seat beside him and three standing near the telephone post some twenty or thirty feet away. *Ziehm v. Vale,* 98 Ohio St. 306, 120 N. E. 702, 1 A. L. R. 1381.

It has been held that one inviting another to ride gratuitously in his automobile is not, in the absence of gross negligence, liable for injury to him by the overturning of the car by the chauffeur. *Massaletti v. Fitzroy,* 228 Mass. 487, 118 N. E. 168, L. R. A. 1918C, 264.

The question has been discussed but not decided by this court. *O'Shea v. Lavoy,* 175 Wis. 456, 185 N. W. 525.

Under the testimony given by the boys it is very difficult to ascertain upon which side of the car the plaintiff was at

Routt v. Look, 180 Wis. 1.

the time of his injury.   Joseph Gallowitz and John Gallowitz testify that the driver bent over Joseph to look at the boys on the fender.   The car being a Ford, it was a left-hand drive, and Joseph must have been sitting on the right of the driver; but two of the boys testified very clearly and very definitely that they were upon the left-hand side of the car. *Look* testified that the boy received his injuries while on the right-hand side of the car.   There is no testimony sufficient to sustain a finding that the driver of the truck ever saw *Stephen* as he was clinging to the side of the car.   The testimony of the children to the effect that the driver saw *Stephen,* taken in connection with the established physical facts and all other testimony in the case, shows that it is a mere conclusion and under the circumstances so against the physical facts and great weight of the evidence as to be insufficient to support the verdict.   While the accident is most distressing, the defendants cannot be held liable therefor in the absence of satisfactory proof of the violation of some duty which they owed the plaintiff.   We find no legal grounds upon which such liability can be predicated.  While children for a great many years have had the habit of climbing upon moving vehicles for the purpose of securing a ride, particularly upon sleighs and upon slowly-moving vehicles, and while no doubt many injuries have been sustained, we find no reported case in this or any other state involving facts of that kind.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the plaintiff's complaint.

A motion for a rehearing was denied, with $25 costs, on March 6, 1923.