SORENSON, by guardian, Appellant, VS. CHICAGO, MILWAU-
KEE & ST. PAUL RAILWAY COMPANY, Respondent.

*January 13—February 8, 1927.*

*Railroads: Negligence: School children walking on tracks: Licen-
sees: Trespassers: Degree of care required of railroad.*

1. Sub. (2), sec. 192.49, Stats., prohibiting others than excepted
   persons from walking, loitering, or being upon or along rail-
   road tracks, should be so construed as to permit it to accom-
   plish its purpose of preventing loss of lives from the use of
   the tracks by pedestrians. p. 233.
2. Continuous and long-continued use of a well-defined path across
   or along a railroad right of way at or near depot grounds may
   be the basis of an implied license to pass across or along the
   railroad property. p. 234.
3. A boy who was injured while walking along a railroad right of
   way by a severe electrical shock from a signal system is a
   trespasser toward whom the railroad company owed no duty
   of making its right of way a safe place of employment, under
   secs. 101.01 to 101.31, Stats., and was not a licensee, though
   the children of two families walked along the right of way
   going to and from school without being prevented from so
   doing by the railroad company. pp. 234, 236.
4. A railroad company is not required to exercise any active duty
   of care or diligence toward mere trespassers on its tracks to
   keep a lookout to discover or protect them from injury. It is,
   however, required to use all reasonable and proper effort, after
   discovering them in a position of danger or peril, to save and
   protect them from the probable consequences of their indiscre-
   tion or negligence. p. 236.
   CROWNHART, J., dissents in part.

APPEAL from a judgment of the circuit court for Juneau
county: E. W. CROSBY, Circuit Judge. *Affirmed.*

Action to recover for personal injuries sustained by *Clar-
ence Sorenson* while walking upon the right of way of the
*Chicago, Milwaukee & St. Paul Railway Company.* From
a judgment dismissing the action *Clarence Sorenson* appeals.

Two months prior to the time when appellant was injured,
a severe sleet storm had broken down the poles and wires car-
rying the electric current that operated the automatic signal
system of the defendant company. Temporary repairs had

been made, but permanent repairs were not completed at the time of injury. While walking along the railroad right of way the plaintiff was thrown to the ground by a severe electric shock from current conveyed by a wire which had been broken by the storm and became charged with electricity of a high voltage by contact with a high-tension wire. Appellant was severely burned and an amputation of his right hand became necessary.

The appellant and his elder brother and sister and the children of one other family had been accustomed to go to and from school by walking either upon the tracks of the defendant company or upon the embankment beside the tracks or along the right of way off the embankment upon which the rails were placed. Occasionally other persons had walked along the tracks or right of way. But outside of two years when a school teacher walked along the right of way, the proof fails to establish any other regular use of the right of way by pedestrians. There was no evidence that travel was confined to any well-beaten or well-defined path. Those who walked along the right of way often walked between the rails. The foreman in charge of this section of the railway occasionally saw the school children walking along the right of way, but did nothing to prevent them from so doing. The railway company had given no warning or placed any signs along the right of way forbidding its use by pedestrians.

For the appellant there was a brief by *Richmond, Jackman, Wilkie & Toebaas* and *Frank Jenks,* all of Madison, and oral argument by *Harold M. Wilkie.*

For the respondent there was a brief by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and *Frank Hanson* of Mauston, and oral argument by *Mr. Trump.*

STEVENS, J. The case presents the question whether appellant was a licensee or a frequenter, or whether he was a tres-

passer upon the defendant's right of way. If he was a tres-
passer, the railway company was under no obligation to make
its right of way a safe place for employment under ch. 101
of the Statutes, even if it could be held that a railway right
of way distant from any station is at all times a place of em-
ployment as defined in these statutes.

Sub. (2) of sec. 192.49 of the Statutes provides:

"It shall be unlawful for any person other than a licensee,
or authorized newspaper reporters or those connected with
or employed upon the railroad, to walk, loiter or be upon or
along the track or tracks of any railroad in this state."

This statute expresses a clear legislative intent to prohibit
the general public from traveling upon a railway right of
way. The purpose of this statute was to curtail the appalling
loss of life that results from the use of railway tracks by
pedestrians. The statute has for its purpose not only the
protection of the lives of pedestrians, but also the lives of
those who operate railway trains and of those who are pas-
sengers on such trains. European countries conserve human
life by keeping the public off the rights of way of railways.
America, by the abolition of grade crossings and the pro-
hibition of the use of railway rights of way by pedestrians,
is endeavoring to profit by the example of European nations.
This law should be construed so as to permit it to accomplish
its benevolent purpose, rather than to give it a construction
that will lead to the sacrifice of human life, even if it may
seem to work a hardship to the individual pedestrian who is
injured while upon the railway right of way.

The first expression of the legislative will upon this sub-
ject is found in sec. 31 of ch. 119, Laws of 1872, which pro-
vided:

"It shall not be lawful for any person other than those
connected with or employed upon the railroad, to walk along
the track or tracks of any railroad, except when the same
shall be laid along public roads or streets."

Appellant was upon the right of way at the time of injury solely for his own convenience. He came within none of the exceptions of sub. (2) of sec. 192.49 of the Statutes. Unless he was a licensee, he was on the right of way in violation of the express prohibition of the legislature and was subject to the punishment prescribed by this section. If appellant was lawfully upon the right of way at the time of the injury, it was because he and others had violated this statute so often and so persistently that it must be assumed that the railway company tacitly licensed such use of its right of way by pedestrians. Were the question now presented for the first time, it might be difficult to conclude that one can acquire the right to violate a law by being guilty of repeated violations of that law. As phrased by Chief Justice WHITE, it is difficult to conclude that repeated disobedience of a legislative act "would become the generating source of a discretionary power to make the disobedience of law lawful." *Daniels v. Wagner,* 237 U. S. 547, 559, 35 Sup. Ct. 740.

But the rule has been established by the decisions of this court that continuous and long-continued use of a well-defined path across or along a railway right of way at or near depot grounds may be the basis of an implied license to pass across or along railway property. But the application of the rule as to licensees ought not to be extended so as to nullify the public policy of the state as declared by the legislature for the manifest purpose of protecting human life.

The Wisconsin cases in which pedestrians upon the right of way have been held to be licensees are those where it was established that large numbers of persons have for long periods of time traveled along well-defined paths upon the right of way. The decisions of this court clearly establish the rule that a license is not to be implied from such use as was made of this right of way by the children of two families going to and from school and by a teacher and by other occasional pedestrians who did not travel along any well-

defined path. "The use of the right of way for the purpose of passage by individuals occasionally, even with the knowledge of the company, should not be construed into an acquiescence in such use by the company, simply because it did not expressly object to such use, or otherwise warn people from making such use of its right of way." *Davis v. C. & N. W. R. Co.* 58 Wis. 646, 653, 17 N. W. 406. "The travel must be confined to a certain and well-defined way; it must have been so continuous, frequent, and well established as to raise an inference of acquiescence in such use on the part of the company." *Mason v. C., St. P., M. & O. R. Co.* 89 Wis. 151, 156, 61 N. W. 300.

The later cases evidence no intent to so extend the application of the rule as to legalize the presence of trespassers upon railway rights of way. A review of all the cases in which it has been held that a pedestrian on a right of way was a licensee shows that "the injury occurred at the station or on the depot grounds or yard, where parties would naturally resort and cross over the same, and where the agents and servants of the company could exercise a proper degree of care and watchfulness under the circumstances; but we have not met with any case, in which the point was necessary to the decision, where it has been held that a license can be implied from such acts of frequent use by pedestrians or wayfarers of the main track or bridges or trestles distant from such places as a pathway for travel." *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195, 205, 58 N. W. 79. No Wisconsin cases were cited and we have found none decided since the *Anderson Case* in which a pedestrian has been held to be a licensee upon a railway right of way which is as far removed from either depot grounds or switch tracks as was the place where appellant was injured. At the place of injury there were no tracks except the two parallel tracks of the main line. The place of injury was not frequented by employees of the company except at such times as they came

to inspect or repair and maintain the tracks or the signal system. The use of the right of way by occasional pedestrians at such a place "is unlike the habitual use by pedestrians of particular paths, walks, and drives at railway stations and on depot grounds and yards which are unfenced and open to the public, and where they may be readily observed by agents of the company." *Schug v. C., M. & St. P. R. Co.* 102 Wis. 515, 521, 78 N. W. 1090.

The appellant was a trespasser, not a licensee. It follows that ch. 101 of the Statutes, which provides that it shall be the duty of the employer to furnish a safe place of employment, imposed no duty on the defendant in this case. The duty of the railway company to trespassers on its right of way is well defined. "The company is not bound to the exercise of any active duty of care or diligence towards mere trespassers on its track, to keep a lookout to discover or protect them from injury, except that, when discovered in a position of danger or peril, it is its duty to use all reasonable and proper effort to save and protect them from the probable consequences of their indiscretion or negligence." *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195, 204, 58 N. W. 79. The defendant company did not discover appellant in any position of danger or peril and was never placed in a position where either under the rules of the common law or under joint orders of the railroad and industrial commissions it failed to perform any duty which it owed to one who was a trespasser upon its right of way.

It follows that the judgment must be affirmed and that it is not necessary to consider any of the other questions presented upon the argument.

*By the Court.*—Judgment affirmed.

The following opinion was filed March 8, 1927:

CROWNHART, J. (*dissenting in part*). *Clarence Sorenson,* the plaintiff below, aged fourteen, while walking on the right

of way of the defendant, came in contact with an electric wire, and as a result of the accident lost his right hand.  He was walking home from school on the accustomed path which had long been used by members of the Sorenson family and others between the Oak Hill school and the Sorenson farm.  The path was on the edge of an embankment outside the rails.

This court has frequently decided that children going on private property under such circumstances of long, accustomed usage are not trespassers, but, on the contrary, are licensees.  A case squarely in point is that of *Brinilson v. C. & N. W. R. Co.* 144 Wis. 614, 129 N. W. 664, where children were accustomed to play on a breakwater, the private property of the railroad company and adjoining its tracks. The child was injured by falling through a hole occasioned by the removal of a plank, and in an action against the railroad company for negligence, notwithstanding the railroad company had a sign "No thoroughfare" and had frequently warned children away from the place, the court held that the child was not a trespasser but was a licensee.  The court, in a unanimous opinion, by Mr. Justice SIEBECKER, said:

"In the light of such facts and circumstances it cannot be said that persons who passed onto the breakwater and adjacent grounds were there under such forbidding circumstances as to make them trespassers.  It seems reasonably clear that people customarily used this place as a footpath and that boys especially used it as a place for the purposes of boating and swimming.  These uses of the premises must be held to have been within the knowledge of the railroad's agents and servants and that an implied permission existed which justified persons in so using the breakwater and adjacent grounds.  Under these circumstances the persons so passing over this place on these premises cannot be considered trespassers; they must be considered as having entered onto the premises with the implied permission of the railroad company for the customary purposes.  The license to so use the premises implies permission to so use them, and the railroad company cannot now be heard to charge that

such use constitutes a trespass.    Under these circumstances persons making such customary use of the premises are licensees."

That case was decided at the January term, 1911.    The legislature of 1915 passed sec. 192.49, Stats., which reads as follows:

"192.49 (1) . . .

"(2) It shall be unlawful for any person other than a licensee, or authorized newspaper reporters or those connected with or employed upon the railroad, to walk, loiter or be upon or along the track or tracks of any railroad in this state. The provisions of this subsection shall not be construed to interfere:

"(a) With the lawful use of a public road or highway by any person or to prevent any person from driving across any railroad from one part of his land to another part thereof or from walking directly across the tracks or right of way of any railroad;

"(b) With the use of the right of way or track by any person when occasioned by or in connection with, either directly or indirectly, the shipping, loading or unloading of freight, seeking employment, the investigation or securing of evidence with respect to any accident or wreck, or in conducting or transacting any other business for or with said railroad;

"(c) With the entry of any employee on said track or tracks during or on account of labor disputes by employees.

"(3) It shall be the duty of each railroad corporation in this state to post notices containing substantially the provisions and penalties of this section, in one or more conspicuous places in or about each railroad station.   Any person violating any provision of subsection (2) or (3) of this section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than one nor more than fifty dollars, or by imprisonment for not exceeding thirty days, or by both such fine and imprisonment."

It will be noted that the statute, in its very first sentence, exempts licensees from the operation of the law.   It does not define licensees, and to my mind there is only one reasonable

and sensible definition to be inferred as within the intent of the legislature, and that is the definition given by the supreme court of this state shortly before on the particular subject of legislation.   It needed no statute to make a person a trespasser who goes upon the right of way of a railroad company without permission, express or implied.   The common law made such persons trespassers.   But the common law did not fix the penalty for trespassing, and the railroad company seemed to have thought that it was necessary to provide a definite penalty which would permit such companies to enforce the law of trespass wherever it was necessary to enforce it.   The history of the legislation was that the railroad companies, by their attorneys, sought the enactment of the law in question, and it is equally plain that the legislature sought to protect innocent people from the rigors of the law by making certain exemptions from its operation, and among these exemptions it provided that the law should not apply to licensees.   It must be assumed that the legislature had the *Brinilson Case* in mind in determining who would come under that definition.   It cannot be assumed, I think, that the legislature would adopt such a harsh and cruel law as would permit the railroad companies, without liability, to carelessly injure, maim, or kill children who customarily walked on a path on the right of way going to and from school.   As interpreted by this court, that is exactly what the railroad companies are permitted to do.   I think this interpretation of the law is unreasonable and unnecessary.

The court has laid down the rule that a license to walk on railroad property cannot now be implied from long-continued use without objection on the part of the company.   In doing this they overrule the doctrine, long established, that a license to walk upon private property is implied from such customary use without objection of the owner.   The statute, reasonably construed, gives the railroad companies the opportunity to prevent misuse of railroad property by the public,

by giving these private companies the protection of the criminal law. I think it goes no further than that. An implied license may be revoked at any time, but until revoked the company should be held liable for its negligence in injuring licensees, without fault on their part.

In this case the jury found the railroad company free from negligence, and I do not dissent from the verdict.