Barbara J. ANDERSON, Plaintiff-Appellant,

v.

GREEN BAY & WESTERN RAILROAD, Defendant-Respondent.†

Court of Appeals

*No. 80–040. Argued September 25, 1980.—
Decided November 11, 1980.*
(Also reported in 299 N.W.2d 615.)

† Petition to review denied.

For the appellant there was a brief by *Olson, Kulkoski, Galloway & Olson, S.C.*, of Green Bay, and oral argument by *Thomas L. Olson*.

For the respondent there was a brief by *Trowbridge, Planert & Schaefer, S.C.*, of Green Bay, and oral argument by *Thomas L. Schober*.

Before Donlin, P.J., Foley, J., and Dean, J.

DONLIN, P.J.    Barbara Anderson alleges that the Green Bay & Western Railroad's negligent operation of its train and its failure to have fenced the location of an accident caused her serious injuries. The railroad argues that because Anderson was an undiscovered trespasser, it had no duty to exercise ordinary care toward her. Rather, its only duty was to refrain from willfully and intentionally injuring her. Because we conclude that the railroad breached no duty to Anderson, and that Anderson is not a member of the class intended to be protected by the fencing statute,[1] we affirm the trial court's grant of summary judgment to the railroad.

---

[1] Section 192.33, Stats., note 13.

At approximately 3 a.m., Anderson attempted to cross the railroad tracks by crawling under the couplings between two freight cars. Both Anderson and her companion testified that they had not heard or seen any locomotive, bells, or lights connected with the stationary train. Anderson was under the couplings when an engine began its switching operations, moving the cars and severing her legs. The engineer rang a bell when the engine began to move, but not before.

An appellate court reviewing a grant of summary judgment employs the same standard as applied by trial courts.[2] Anderson alleges that the railroad was negligent in its switching operations by failing to exercise a lookout for any persons crossing over the tracks and between the cars. Before the failure to exercise a lookout will constitute negligence, a duty to conduct such a lookout must exist. Whether a duty exists is a question of law.[3]

Before a cause of action for negligence can be successfully alleged, there must exist a duty of care on the part of the defendant, a breach of that duty, a causal connection between the conduct and the injury, and an actual loss or damage as a result of the injury.[4] A defendant's duty is established when a reasonable person could foresee that an act or omission to act may cause harm to someone.[5]

Anderson argues that the railroad was negligent in failing to check for persons between and around the cars and along the length of the train before beginning its switching operations. If the railroad were to check between and around all cars prior to the instant the

[2] Wright v. Hasley, 86 Wis.2d 572, 273 N.W.2d 319 (1979).

[3] Coffey v. City of Milwaukee, 74 Wis.2d 526, 247 N.W.2d 132 (1976).

[4] Id.

[5] A.E. Investment Corp. v. Link Builders, Inc., 62 Wis.2d 479, 214 N.W.2d 764 (1974).

train began its switching operation, an extremely large crew would be required. Conversely, if the railroad were to maintain a reasonably sized crew, the provision of a lookout during switching operations would be of very little use. Since a trespasser could easily crawl between the cars after a guard checked between one pair of cars but before all the cars were checked, the utility of exercising a lookout would be severly diminished.

If the duty that the plaintiff alleges the defendant has breached would not reasonably prevent the injury, no duty exists. "The duty to use due care arises from probabilities, rather than from bare possibilities of injury. Failure to guard against the bare possibility of injury is not actionable negligence."[6] When a railroad conducts switching operations within the switching grounds area, providing a guard or lookout to prevent individuals from crawling between or around the cars would only protect against the mere possibility rather than the probability of an injury. Therefore, we conclude that the railroad has no duty to continuously exercise a lookout for individuals between or along the cars when it is performing its switching operations.

Furthermore, under existing law, Anderson is definitely a trespasser. The Wisconsin Supreme Court has defined conduct, such as Anderson's, as trespassing.

If respondent had attempted to go between the cars by going over the coupling, or to have crawled upon the car to get over, he would have been a trespasser. . . . While respondent could properly be a licensee in using this footpath for the purpose of crossing the track when no train was upon it, it cannot be said that he was a licensee when he attempted to crawl under the train. [Citations omitted.][7]

[6] *Grube v. Moths*, 56 Wis.2d 424, 433, 202 N.W.2d 261, 266 (1972).

[7] *Shea v. Chicago, M., St. P. & P. Ry. Co.*, 243 Wis. 253, 256–57, 10 N.W.2d 135, 136 (1943).

Based upon this definition, when Anderson attempted to crawl between the cars and under the couplings, she became a trespasser.

A land occupier does not owe a duty of ordinary care to a trespasser. The occupier must only refrain from willfully and intentionally injuring the trespasser.[8] If the trespasser is discovered and in danger, the land occupier has a duty to warn, but the occupier has no duty to maintain a lookout for trespassers.[9] Since the railroad was unaware of Anderson's presence, its only duty was to refrain from willfully and intentionally injuring her. Because Anderson does not allege such an injury, the trial court's grant of summary judgment to the railroad could be considered proper under this theory as well.

Anderson argues that distinctions between the duties that a land occupier owes to entrants, based upon the entrant's status, are outdated. A number of jurisdictions have abrogated all such distinctions.[10] When the distinction between an invitee and licensee was abolished, the abolition of the lower duty of care owed to a trespasser was also addressed.

Nevertheless, the trespasser's status is entirely different than that of either a licensee or an invitee, both of whom enter the property with knowledge and consent of the landowner. While a convincing argument can be made to demonstrate that the numerous exceptions to the trespasser rule vitiate its effect and warrant an abrogation of the rule and the substitution therefor of a duty of ordinary care that recognizes the peculiar circumstances surrounding the trespass, we conclude

---

[8] *Szafranski v. Radetzky*, 31 Wis.2d 119, 141 N.W.2d 902 (1966); *Nalepinski v. Durner*, 259 Wis. 583, 49 N.W.2d 601 (1951); *Routt v. Look*, 180 Wis. 1, 191 N.W. 557 (1923); *Lloyd v. S.S. Kresge Co.*, 85 Wis.2d 296, 270 N.W.2d 423 (Ct. App. 1978).

[9] *Routt*, note 8.

[10] *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d 97 (D.C. Cir. 1972); *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (1968).

that the distinction is so great between that legal status and that of the licensee-invitee that we ought not consider now the abrogation of the rule in regard to trespassers.[11]

While the supreme court may now wish to consider the trespasser rule archaic and its abrogation proper, we decline to address the issue when the trespasser's special legal status has been so recently reiterated.

In enacting sec. 192.32, Stats., the legislature has also recognized the special status of the trespasser as compared to a licensee. This section provides that "[n]o person, other than a licensee or authorized newspaper reporters or those connected with or employed upon the railroad, shall walk, loiter or be upon or along the track of any railroad." It imposes a fine for such a violation. Section 192.32 (1) has been interpreted as preventing the extension of a railroad's duty to trespassers beyond that established at common law.

This statute expresses a clear legislative intent to prohibit the general public from traveling upon a railway right of way. The purpose of this statute was to curtail the appalling loss of life that results from the use of railway tracks by pedestrians. The statute has for its purpose not only the protection of the lives of pedestrians, but also the lives of those who operate railway trains and of those who are passengers on such trains. . . . This law should be construed so as to permit it to accomplish its benevolent purpose, rather than to give it a construction that will lead to the sacrifice of human life, even if it may seem to work a hardship to the individual pedestrian who is injured while upon the railway right of way.[12]

This application of the statute may need to be reconsidered in light of Wisconsin's comparative negligence

---

[11] *Antoniewicz v. Reszcynski*, 70 Wis.2d 836, 843, 236 N.W.2d 1, 4 (1975).

[12] *Sorenson v. Chicago, M. & St. P. Ry. Co.*, 192 Wis. 231, 233, 212 N.W. 273, 274 (1927).

law. Violation of the statute might now operate only as evidence of the trespasser's contributory negligence and not as a complete bar to recovery. Such a reappraisal, however, is more properly undertaken by this state's highest court.

Anderson also contends that the railroad was negligent in failing to erect a fence, in violation of sec. 192.33, Stats., along the area where she was injured. The language of the statute [13] indicates that the plaintiff is not

[13] Section 192.33, Stats., provides:

**Fences, cattle guards, crossings.** (1) Every corporation operating any railroad shall erect and maintain on both sides of its road (depot grounds excepted) sufficient fences with openings or gates or bars therein, and suitable and convenient farm crossings for the use of the occupants of the lands adjoining and shall maintain cattle guards at all highway crossings (outside of municipalities) and connect their fences therewith. This section shall not apply to that part of the road where sidetracks or switch tracks are used in cities of the first class.

(2) All roads shall be so fenced and such cattle guards be made within one month from the time of commencing to operate the same, so far as operated. Until such fences and cattle guards shall be made, every railroad corporation owning or operating any such road shall be liable for all damages done to domestic animals, or persons thereon, occasioned in any manner, in whole or in part, by the want of such fences or cattle guards; but after such fences and cattle guards shall have been constructed such liability shall not extend to damages occasioned in part by contributory negligence, nor to defects existing without negligence on the part of the corporation or its agents.

(3) The sufficiency of fences shall be determined according to the provisions of chapter 90; but nothing herein shall render any fence insufficient which was a legal or sufficient fence when built.

(4) No fence shall be required in places where ponds, lakes, watercourses, ditches, hills, embankments or other sufficient protection renders a fence unnecessary to prevent domestic animals from straying upon the right of way.

(5) The maintenance of cattle guards may be omitted by the railroad company with the written consent of the commission specifying the particular crossings.

a member of the protected class. The statute is directed to preventing injuries to people and cattle that could be caused by collisions between trains and cattle. Although the early cases seem to find that the statute meant to protect persons by preventing their entry onto the railroad tracks,[14] we agree with the trial court's conclusion to the contrary. If a person in Anderson's position is allowed a right of action against the railroad because it failed to exercise ordinary care, it will not come from the extension of the fencing statute. This conclusion is supported by the past use of the rule.[15] Because we conclude that the fencing statute is not meant to protect a person in Anderson's status, it does not provide her with a cause of action.

*By the Court.*—Judgment affirmed.

[14] *Bejma v. Chicago & Milwaukee Electric Co.*, 160 Wis. 527, 149 N.W. 588 (1914); *Ulicke v. Chicago & N. W. Ry. Co.*, 152 Wis. 236, 139 N.W. 189 (1912); *Schwind v. Chicago, M. & St. P. Ry. Co.*, 140 Wis. 1, 121 N.W. 639 (1909).

[15] *Shea*, note 7; *Frederick v. Great Northern Ry Co.*, 207 Wis. 234, 241 N.W. 363 (1932); *Sorenson*, note 12.